**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

John F. Lomax, Jr., SBN 020224
Daniel B. Pasternak, SBN 023751
*Attorneys for PatchLink Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mehran Mosbriantanha,<br><br>                              Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>                              Defendant. | Case No. MC-<br><br>Civil Action No. 8:07-CV-0211 DKC (Consolidated with No. 8:07-CV-0321 DKC) Pending in the United States District Court for the District of Maryland, Greenbelt Division |
| Farhad Shirmohammadi,<br><br>                              Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>                              Defendant. | **PATCHLINK CORPORATION'S MOTION TO COMPEL PRODUCTION AND ENFORCE SUBPOENAS** |

PatchLink Corporation ("PatchLink" or "the Company"), defendant in the above-captioned actions, moves this Court, pursuant to Federal Rules of Civil Procedure 26, 37, and 45, for an Order: (1) compelling Sean Moshir and Kourosh Moshir (collectively, "Respondents") to produce documents responsive to subpoenas *duces tecum* served on each of them on June 29, 2007 (the "Arizona Subpoenas"); and (2) awarding PatchLink

PHX 327946734_2

its reasonable attorneys' fees and costs incurred in bringing this Motion.[1] True and correct copies of the Arizona Subpoenas and accompanying proofs of service are attached hereto as **Exhibits A** and **B**.

PatchLink supports this Motion with the following Memorandum of Points and Authorities and attached exhibits, and its separately filed Certification of Moving Counsel, all of which are incorporated herein by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In late 2006 and early 2007, plaintiffs Mehran Mosbriantanha and Farhad Shirmohammadi filed complaints in Maryland state court against PatchLink. Each is a former PatchLink employee terminated by PatchLink as part of a reduction-in-force implemented on September 6, 2005. PatchLink subsequently removed those cases to the federal district court in Maryland. In their Second Amended Complaints, the plaintiffs each allege that, in terminating their employment, PatchLink violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as well as Maryland state and local law.

In connection with these cases (the "Maryland Cases"), on June 29, 2007, PatchLink served the Arizona Subpoenas on Respondents. Respondents -- each of whom is an Arizona resident and non-party in the Maryland Cases -- were senior executives of PatchLink prior to the September 6, 2005 reduction-in-force (the "RIF") through which the plaintiffs in the Maryland Cases were terminated. (Sean Moshir was PatchLink's Chief Executive Officer and Chairman of its Board of Directors; Kourosh Moshir was

---

[1] PatchLink simultaneously submits its Motion to Expedite Briefing Schedule and Oral Argument, requesting that this Motion be considered on an expedited basis, as good-faith efforts over the past weeks have failed to resolve the matters discussed herein, certain key witness depositions are scheduled to take place in approximately four weeks, and the discovery cutoff in the above-captioned cases is in six weeks.

PatchLink's President.) These subpoenas seek materials relevant to PatchLink's defense of the Maryland Cases.

Following PatchLink's service of the Arizona Subpoenas on Respondents, Respondents objected (through counsel) to producing each and every document identified in the Arizona Subpoenas.[2] At all times thereafter, and despite the good-faith efforts of undersigned counsel to secure their compliance,[3] they have refused to comply, and continue to refuse to comply, with the Arizona Subpoenas, necessitating the filing of this action.[4]

## II. FACTUAL BACKGROUND

### A. The Maryland Cases.

PatchLink, based in Scottsdale, Arizona, is a leading provider of electronic information security patch and vulnerability management solutions. These solutions help chief security officers, risk managers, compliance officers, and information technology administrators address information technology security issues and protect their businesses from emerging computer threats and attacks.

In mid-2005, PatchLink management determined, for various business-related reasons, including below-expected revenue and overstaffing, to reduce expenses by, among other things, conducting a reduction-in-force. In late July 2005, PatchLink laid off 17 employees. PatchLink soon realized, however, that this reduction-in-force was insufficient and would not accomplish the objectives it was intended to fulfill.

---

[2] Kourosh Moshir eventually produced six (6) pages of documents responsive to the subpoena.

[3] *See* undersigned counsel's Certification of Moving Counsel, filed separately with this Motion.

[4] The Arizona Subpoenas also compelled Respondents' attendance at depositions. After initial objections, Respondents each complied with the *ad testificandum* portion of the Arizona Subpoenas, but, as described herein, they have at all times refused to comply with the *duces tecum* portion of the subpoenas.

Accordingly, on September 6, 2005, PatchLink laid off an additional 24 employees in a second reduction-in-force. As part of this RIF, PatchLink also eliminated its satellite office operations in Maryland.[5]

The plaintiffs in the Maryland Cases worked at PatchLink's Maryland office, and each was terminated in the RIF. As discussed above, each filed a lawsuit against PatchLink alleging, *inter alia*, that PatchLink's inclusion of them in the RIF violated certain federal and local civil rights statutes, based on their national origin, then later they also claimed race discrimination. True and correct copies of the Second Amended Complaints in the Maryland Cases are attached hereto as **Exhibits C** and **D**.

As noted above, Respondents were at the top level of PatchLink management at the time the first reduction-in-force was implemented. Each continued to be employed after the first reduction-in-force, and each was consulted with concerning the need for a second round of layoffs, including their assessment of which employees should be included in the RIF. As senior managers (and in Sean Moshir's case, as a director and officer) of PatchLink, each has intimate, direct, first-hand, personal knowledge concerning facts relevant to the first reduction-in-force and the RIF -- facts directly related and relevant to the issues presented in the Maryland Cases.

Beyond the knowledge they have concerning the layoffs at issue in the Maryland Cases, Sean Moshir and Kourosh Moshir also possess discoverable information directly related to the plaintiffs' claims in the Maryland Cases in light of their personal relationships with the plaintiffs and other witnesses in those cases. (For example, the

---

[5] After the first reduction-in-force was implemented, but before the September 6, 2005 layoffs, PatchLink's Board of Directors decided to make changes at the top levels of Company management. As part of these changes, Sean Moshir was removed as Chief Executive Officer. PatchLink offered Sean Moshir the opportunity to continue as an employee of PatchLink as its Chief Technology Officer, but he declined that offer and voluntarily resigned his employment with PatchLink on or about September 14, 2005. Also as part of these changes, Kourosh Moshir was removed as PatchLink's President. His employment with PatchLink ended on or about September 5, 2005.

PHX 327946734_2

- 4 -

plaintiffs in the Maryland Cases spent 10 days vacationing in Arizona earlier this year, during which time they stayed at Sean Moshir's home. Also, one of the plaintiffs in the Maryland Cases is Sean Moshir's college roommate, and is Sean Moshir's and Kourosh Moshir's current business partner in a business they started after their employment at PatchLink ended.) The record thus far in the Maryland Cases demonstrates that the plaintiffs in those cases have obtained little, if any, evidence of alleged discrimination other than what Sean Moshir and Kourosh Moshir have shared with them.

### B. The Subpoenas and Respondents' Objections.

Through the Arizona Subpoenas, PatchLink seeks to obtain information, including electronically stored information, in Respondents' possession related to three discrete areas of inquiry, each of which is directly relevant to, and likely to lead to the discoverable information in, the Maryland Cases: 1) the July and September 2005 reductions-in-force; and 2) communications between Respondents and the plaintiffs in the Maryland Cases; and 3) communications between Respondents and certain present and former PatchLink and Board members. Specifically, PatchLink's Arizona Subpoenas seek from Respondents the following:

- all documents and electronically stored information that evidence, reflect, refer or relate to, concern, or discuss any reductions-in-force or layoffs implemented by PatchLink Corporation in 2005;

- all documents and electronically stored information that evidence, reflect, refer or relate to, or summarize any communication between the subpoena recipient and Farhad Shirmohammadi a/k/a Frank Shirmo or his agents or attorneys between July 1, 2005 and the present;

- all documents and electronically stored information that evidence, reflect, refer or relate to, concern, discuss, or summarize any communication between the subpoena recipient and Mehran Mosbriantanha or his agents or attorneys between July 1, 2005 and the present;

- all documents and electronically stored information that evidence, reflect, refer or relate to, concern, discuss, or summarize any communications from August 2004 to the present between the subpoena recipient and each of the following individuals: 1) Corey

> Smith; 2) Gary Acord; 3) Laura Frederickson; 4) Rory O'Driscoll; 5) Howard Schmidt; 6) Chris Noble; and 7) Jeff Banks;
>
> - all documents and electronically stored information that constitute, evidence, reflect, refer or relate to, concern, discuss, or summarize any communication between Sean Moshir and Kourosh Moshir and their agents and attorneys from July 1, 2005 to the present and that is related to or concerns any of the following topics: 1) reductions-in-force or layoffs implemented by PatchLink Corporation in 2005; 2) conduct or statements by any former or current supervisor, officer, or director of PatchLink Corporation that the subpoena recipient believes are discriminatory against individuals' national origin; and 3) Farhad Shirmohammadi a/k/a Frank Shirmo; or 4) Mehran Mosbriantanha; and
>
> - all documents and electronically stored information in the subpoena recipient's possession, custody, or control that constitute electronic mail from PatchLink Corporation's e-mail system.[6]

By letter dated July 13, 2007,[7] Sean Moshir timely objected (through counsel) to each item identified for production in the subpoena PatchLink served on him. *See* **Exhibit E**. Following an agreed-upon extension of the date to object to the subpoena PatchLink served on him, by letter dated July 17, Kourosh Moshir also objected to each item set forth in his subpoena. *See* **Exhibit F**. PatchLink responded to both Sean Moshir's and Kourosh Moshir's objections by letters dated August 8. *See* **Exhibits G and H**. Sean Moshir replied to PatchLink's August 8 letter on August 15, *see* **Exhibit I**, demanding that PatchLink provide proof -- in the form of a sworn statement from PatchLink's Director of Information Technology -- that the materials sought by the subpoena are not in PatchLink's possession.[8] PatchLink provided that statement on September 7, along with a letter explaining that if Sean Moshir did not comply with the

---

[6] The subpoena PatchLink served on Sean Moshir also seeks all documents and electronically stored information in his possession, custody, or control which he prepared or relied upon in anticipation of or preparation for his interview by the EEOC on May 25, 2007, or that he relied upon, reviewed, or viewed during his interview by the EEOC on May 25, 2007.

[7] All dates hereinafter are 2007, unless otherwise noted.

[8] Although Kourosh Moshir's counsel indicated that he intended to respond to PatchLink's August 8 letter, and requested an extension of time to do so, which was given, PatchLink never received any response.

PHX 327946734_2

- 6 -

subpoena served on him by September 14, PatchLink would file this action. *See* **Exhibit J.**[9] As of the filing of this Motion, Respondents have not produced documents responsive to the Arizona Subpoenas (with the exception of the six (6) pages of information produced by Kourosh Moshir noted above).

### III.  ARGUMENT

PatchLink has properly served Respondents, non-parties to the Maryland Cases, with valid subpoenas pursuant to Fed.R.Civ.P. 45. Respondents have failed to comply with those subpoenas, and PatchLink now brings this action to compel their production. This is the proper procedure for obtaining discovery from non-parties. *See* Fed.R.Civ.P. 37(a)(1); *Schwartz v. Home Depot U.S.A., Inc.*, No. 06-2168-PHX-FJM, 2007 U.S. Dist. LEXIS 49830 at *2 (July 6, 2007).

The Federal Rules of Civil Procedure provide for broad discovery "regarding any matter, not privileged that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). This standard applies to both parties and non-parties, such as Respondents. *See Beinin v. Ctr. for the Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 U.S. Dist. LEXIS 22518 at *4-5 (N.D. Cal. Mar. 16, 2007); *Int'l Brotherhood of Teamsters v. Eastern Conf. of Teamsters*, 162 F.R.D. 25, 28-29 (S.D.N.Y. 1995). Moreover, although PatchLink must "meet the initial burden of showing that the documents it seeks are relevant and necessary to this action . . . relevancy in this context is to be construed liberally and is not limited to the precise issues presented by the pleadings." *Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 41 (S.D.N.Y. 1992) (citation omitted). Here, the information sought from Respondents falls squarely within the scope established by

---

[9] PatchLink also provided this statement to Kourosh Moshir's counsel on September 7, and also informed him that, absent compliance with the subpoena served on Kourosh Moshir by September 14, it would file this action. *See* **Exhibit K.**

Fed.R.Civ.P. 26, as this discovery may lead to the discovery of relevant, admissible evidence in the Maryland Cases.

Based on correspondence with Respondents' counsel, it appears that the primary reason they refuse to comply with the Arizona Subpoenas is they believe that the information sought by those subpoenas is already in PatchLink's possession. *See* Ex. K ("the overriding issue that consumes all others -- Mr. Moshir's equal-burden Objection and PatchLink's claim that it does not have the originals or copies of his emails that are responsive to the subpoena").[10]  On several occasions, PatchLink explained to Respondents' counsel that it does not have (or cannot readily access) the information sought by the Arizona Subpoenas. *See* Exs. G and H.  PatchLink even went so far as to comply with counsel's request that PatchLink provide a sworn statement from its current Director of Information Technology attesting to the fact that PatchLink does not have or cannot readily access the information Respondents possess. *See* Ex. J.[11]  Despite the fact that PatchLink provided the proof specifically requested by Sean Moshir's counsel --  it "put its money where its mouth is," to quote from counsel's August 15 letter -- Sean Moshir still has not complied with the subpoena served on him, and neither has Kourosh Moshir.

---

[10] Although Respondents also objected to the Arizona Subpoenas on the grounds that certain materials sought by them are privileged, Respondents failed to comply with the requirements in Fed.R.Civ.P. 45(d)(2) (requiring a description of materials withheld on the basis of an asserted privilege).  PatchLink pointed out this deficiency to Respondents' counsel (*see* Exs. G and H), yet Respondents did not remedy their noncompliance, arguably waiving any assertion of privilege.  *See, e.g., OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271 (RWS), 2006 U.S. Dist. LEXIS 90970 at *20-24 (S.D. N.Y. Dec. 16, 2006) (subpoenaed third-party "waived any privilege with respect to its withheld documents by failing to properly identify them on a privilege log in compliance with" Rule 45(d)(2)); *Ceramic Corp. of America, Inc. v. Inka Maritime Corp., Inc.*, 163 F.R.D. 584 (C.D. Cal. 1995) ("[f]ailure to comply with Rule 45(d)(2) risks the finding that the privilege has been waived.").

[11] As noted above, PatchLink also provided this statement to Kourosh Moshir's counsel. *See* Ex. K.

Although it is unclear why the proof supplied to Respondents' counsel has not resulted in their compliance with the subpoena, lest there be any doubt that PatchLink does not possess the information sought in the Arizona Subpoenas (or, if it does, that it cannot readily access this information), attached as **Exhibit L** hereto is the Declaration of Jason Struve.  Mr. Struve has been employed by PatchLink in its Information Technology department since February 2005 (i.e., well before the September 6, 2005 reduction-in-force).  His declaration, like that of Director of Information Technology BJ Mills (attached to Ex. J), explains that PatchLink either does not have, or cannot readily access without incurring tens of thousands of dollars in expense, the information sought by the Arizona Subpoenas.

Respondents cannot deny that they possess this information.  As noted above, Respondents complied with *ad testificandum* portion of the Arizona Subpoenas, sitting for depositions in late July.  Their deposition testimony unequivocally establishes that they have the electronically stored information PatchLink seeks through the Arizona Subpoenas.  At his deposition, Sean Moshir testified as follows:

> Q. Do you have all your e-mails from PatchLink?
>
> A. I believe I have.  That was part of my settlement, to have my e-mails?
>
> Q. You were allowed to keep your e-mails?
>
> A. Correct.
>
> \*   \*   \*
>
> Q. But you believe you have your sent e-mails from -- from ---
>
> A. A good portion of it.  I should have a good portion of it, yes.
>
> \*   \*   \*

//

//

|   |   |   |
|---|---|---|
| Q. | So you were able to take your Microsoft Outlook e-mail files with you after you left as an employee of the Company? | |
| A. | Yes, I was -- I could have taken -- | |
| Q. | Mr. Moshir -- | |
| A. | I was able to take my e-mails out with me. | |

See **Exhibit M**, excepts from Sean Moshir's deposition testimony establishing that, as of July 19 (three weeks after the Arizona Subpoenas were issued), he possessed documents responsive to the subpoena served on him by PatchLink.[12]  For his part, Kourosh Moshir testified as follows:

|   |   |
|---|---|
| Q: | You still have all your PatchLink e-mails? |
| A: | I do have my own PatchLink e-mails, yes. |
| Q. | That went through PatchLink servers? |
| A. | Every one for me went through PatchLink serv[ers]. |

\*     \*     \*

|   |   |
|---|---|
| Q. | What portion of PatchLink e-mails do you still possess? |
| A. | A lot of the e-mails that pertain to me personally.  I didn't have any other e-mail address that I used. |
| Q. | Do you have an electronic copy of those? |
| A. | Yes, I do. |

---

[12]   With respect to Sean Moshir, there is at least one possible explanation, albeit irrelevant, why he has stubbornly resisted production under the subpoena of PatchLink documents he admits he has.  In connection with a confidential settlement reached between Sean Moshir and PatchLink in October 2006, Sean Moshir represented to PatchLink that he had turned over to PatchLink all Company property in his possession.  Of course, his July 2007 sworn deposition testimony that he in fact does have PatchLink property in his possession (his Microsoft Outlook email files) establishes that he breached that representation in the settlement, for which there may be consequences adverse to his interests.  However, that Sean Moshir may have placed himself in a difficult position by signing a contract in October 2006 stating he had returned all of PatchLink's property, and thereafter admitting in sworn testimony in July 2007 that he does possess PatchLink property, has no bearing on the enforceability of the subpoena served on him by PatchLink at issue in this action.

*See* **Exhibit N**, excerpts of Kourosh Moshir's testimony in which he admits that he possesses PatchLink email files. Thus, there can be no argument from Respondents that they should not be ordered to produce the documents sought by the Arizona Subpoenas because they do not possess any responsive information.

Fed.R.Civ.P. 45(c)(3)(B)(iii) provides that "if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or materials that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions." *See nSight, Inc. v. PeopleSoft, Inc.*, No. 3:04 CV 3836 MMC (MEJ), 2006 U.S. Dist. LEXIS 22383 (N.D. Cal. Apr. 13, 2006). Here, PatchLink has demonstrated that the information sought likely is not in its possession, and that it will cost as much as almost $50,000 just to determine if it does have this information on uncategorized backup data tapes. In contrast, Respondents admittedly possess the information sought by PatchLink, and presumably can readily access and produce this information with little cost or burden. Given these facts, PatchLink submits that the situation presented here is precisely that contemplated by the subsection of Rule 45 quoted above. PatchLink has a substantial, legitimate need for the information Respondents possess, and it cannot obtain this information without undue hardship, if at all. Accordingly, under these circumstances, Respondent's production should be compelled, and the Arizona Subpoenas enforced.

## IV. CONCLUSION

The matter at hand is quite simple. PatchLink properly issued out of this Court subpoenas to two Arizona residents who, although not parties to the Maryland Cases, possess discoverable information relevant to that litigation. Respondents objected to those subpoenas, and PatchLink responded, explaining why Respondents' objections are legally insufficient or incorrect. Given the importance of the information sought by the

Arizona Subpoenas to PatchLink's defense in the Maryland Cases, and in light of the relatively minimal burden imposed on Respondents in complying with the Arizona Subpoenas, the subpoenas should be enforced, and Respondents ordered to comply with them.

For the foregoing reasons, PatchLink respectfully requests that the Court issue an Order pursuant to Fed.R.Civ.P. 45(c)(2)(B) compelling Respondents Sean Moshir and Kourosh Moshir to comply with Federal Rules of Civil Procedure Rules 45 and 37 and produce those documents in their possession, custody, and control that are responsive to the Arizona Subpoenas. Additionally, PatchLink requests it be awarded its reasonable attorneys' fees and costs incurred in bringing this Motion, pursuant to Fed.R.Civ.P. 37(a)(4)(A).

DATED this 19th day of September, 2007.

GREENBERG TRAURIG, LLP

By: /s/Daniel B. Pasternak
John F. Lomax, Jr.
Daniel B. Pasternak
*Attorneys for PatchLink Corporation*

PHX 327946734_2

- 12 -

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## CERTIFICATE OF SERVICE

☒  I hereby certify that on September 19, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing and Order to the following CM/ECF registrants:

> David N. Farren, Esq.
> JABURG & WILK, P.C.
> 3200 North Central Avenue
> Suite 2000
> Phoenix, Arizona 85012
> *Attorneys for Respondent Sean Moshir*
> DNF@jaburgwilk.com
>
> James M. Jellison, Esq.
> JELLISON LAW OFFICE, PLLC
> 3101 North Central Avenue
> Suite 1090
> Phoenix, Arizona 85012
> *Attorneys for Respondent Kourosh Moshir*
> Jim@jellisonlaw.com

☒  I hereby certify that on September 19, 2007, I served the attached document by overnight mail on the following, who are not registered participants of the CM/ECF System:

> Morris E. Fischer, Esq.
> LAW OFFICES OF MORRIS E. FISCHER
> Air Rights Center
> 4550 Montgomery Avenue, Suite 601N
> Bethesda, MD 20814
> *Attorney for Plaintiff Mehran Mosbriantanha and Plaintiff Farhad Shirmohammadi*

            *s/Colleen B. Mantz*

PHX 327946734_2