# EXHIBIT J

# Greenberg
# Traurig

John F. Lomax, Jr.
Tel. 602.445.8514
Fax 602.445.8616
LomaxJ@gtlaw.com

September 7, 2007

**VIA EMAIL AND
FIRST CLASS MAIL**

David N. Farren, Esq.
Jaburg & Wilk, P.C.
3200 North Central Avenue
Suite 2000
Phoenix, Arizona  85012

**Re:   Sean Moshir**

Dear David:

As you requested in your August 15, 2007 letter, attached is an affidavit of BJ Mills, PatchLink's Director of Information Technology.  This affidavit confirms that PatchLink does not possess in a readily attainable format the email files your client testified that he possesses. Your client, on the other hand, has PatchLink emails readily available.  Please have your client produce the subpoenaed documents.  Although your letter indicates that Mr. Moshir will need more than a week to search for these emails, we believe that he likely has a good sense of where they are located, and in any event, do not believe that this search should take more than a few hours.  Should we not receive Mr. Moshir's complete PatchLink .pst file he copied (or had copied at his instruction) off of PatchLink's email server before his separation from the Company by the close of business on September 14, 2007, we intend to commence an action in the District Court to enforce the subpoena.

Sincerely,

*[signature]*

John F. Lomax, Jr.
For the Firm

JFL:srw
Enclosure

cc:   Daniel B. Pasternak

*PHX 327938451v1*

| |
|---|
| ALBANY |
| AMSTERDAM |
| ATLANTA |
| BOCA RATON |
| BOSTON |
| BRUSSELS* |
| CHICAGO |
| DALLAS |
| DELAWARE |
| DENVER |
| FORT LAUDERDALE |
| HOUSTON |
| LAS VEGAS |
| LONDON* |
| LOS ANGELES |
| MIAMI |
| MILAN* |
| NEW JERSEY |
| NEW YORK |
| ORANGE COUNTY |
| ORLANDO |
| PHILADELPHIA |
| PHOENIX |
| ROME* |
| SACRAMENTO |
| SILICON VALLEY |
| TALLAHASSEE |
| TAMPA |
| TOKYO* |
| TYSONS CORNER |
| WASHINGTON, D.C. |
| WEST PALM BEACH |
| ZURICH |
| *Strategic Alliance Tokyo-Office/Strategic Alliance |

Greenberg Traurig, LLP | Attorneys at Law | 2375 East Camelback Road | Suite 700 | Phoenix, AZ 85016 | Tel 602.445.8000 | Fax 602.445.8100

www.gtlaw.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mehran Mosbriantanha,<br><br>       Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>       Defendant. | Case No. 07-MC-_____<br><br>Related to Civil Action No. 8:07-00211-DKC (consolidated with No. 8:07-00321-DKC); pending in the United States District Court for the District of Maryland, Greenbelt Division |
| Farhad Shirmohammadi,<br><br>       Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>       Defendant. | |

## DECLARATION OF BJ MILLS

STATE OF ARIZONA  )
         ) ss
COUNTY OF MARICOPA )

   1.  My name is BJ Mills.  I am over 18 years of age and competent to make this Declaration.  The facts set forth in this Declaration are based on my personal knowledge or

information I have learned since joining PatchLink. I could and would competently testify to the same if called as a witness in this action.

2.    I am currently employed by PatchLink Corporation ("PatchLink" or the "Company") as its Director of Information Technology ("IT") at its Scottsdale, Arizona headquarters, located at 15880 North Greenway Hayden Loop, Suite 100, Scottsdale, Arizona 85260. In that position, I am the duly authorized custodian of IT records for PatchLink, and I have the authority to certify the records. I began working for PatchLink in January 2007.

3.    In the course of performing my duties as Director of IT, I have spoken with personnel in PatchLink's IT department who were employed by PatchLink during the time periods discussed in this Declaration, and researched the issues raised in this Declaration concerning PatchLink's email systems and, in particular, the email files of Kourosh Moshir and Sean Moshir.

4.    In the summer of 2005 and until September 6, 2005, Milad Al-Najjar was the Company's IT Director, and was responsible for the Company's IT systems, including the Company's email systems and servers.

5.    During the time that Mr. Al-Najjar was in charge of PatchLink's IT department and its IT systems and servers, it appears that the Company had no formal written electronic data backup policies within the IT department for preservation of email sent and received by PatchLink employees over PatchLink's email server.

6.    In September 2005, whenever a PatchLink employee was terminated or resigned from the Company, an IT department employee was notified regarding the termination or resignation. Any IT record preservation procedures, including any such procedures for preservation of employees' emails, were carried out by individual members of the IT department, as directed by a Company manager or executive, and were not mandated under any specific guideline.

7.      In September 2005, notice of an employee's termination or resignation generally came to the IT department through in-person, telephonic, or email notification. Upon notification, PatchLink IT personnel were under standing instructions to take appropriate steps to deactivate the departing employee's user accounts, including removing network access privileges, resetting passwords, removing the employee from any network or distribution groups, forwarding telephone calls and email (if requested/necessary), and the return of any hardware belonging to the departing employee.

8.      In September 2005, upon termination or resignation, employee email accounts were left intact (i.e., not deleted) and were stored on backup tapes. In September 2005, PatchLink created backup tapes each night, and full backups were conducted on weekends. Backup tapes containing electronically stored information, including departed employee email accounts, were randomly rotated and reused.

9.      On or about September 12, 2005, PatchLink hired Brian Steele as PatchLink's Director of IT and Operations. Mr. Al-Najjar and others in PatchLink's IT and operations departments were terminated as part of reductions-in-force implemented by the Company in September 2005.

10.     Shortly after Mr. Steele took over PatchLink's IT department, he purchased an application called ExMerge in order to preserve PatchLink employee email accounts upon termination of employment. ExMerge is designed to take a snapshot of a user's email account and compress it into a single Microsoft Outlook .pst file for purposes of network storage. The average size of a PatchLink employee's .pst file is in the range of one (1) to two (2) gigabytes.

11.     After their separation of employment with PatchLink on September 6 and 14, 2005, respectively, Kourosh Moshir's and Sean Moshir's PatchLink email accounts were processed using ExMerge by IT department personnel. The resulting .pst files were abnormally small, particularly for the Company's CEO and President. Upon further

examination of Kourosh Moshir's and Sean Moshir's .pst files, it was discovered that the "Inbox," "Sent," and "Deleted" folders were virtually empty, with exception of spam email. The only way to create this situation is to manually delete the contents of these folders.

12.   Efforts made by IT department personnel to locate additional emails received, sent, and deleted by Kourosh Moshir and Sean Moshir prior to their separation of employment in September 2005 within PatchLink's file server and a ghost server used as overflow storage on the Company's network yielded no additional files for either Kourosh Moshir's or Sean Moshir's email accounts.

13.   PatchLink currently maintains backup storage tapes on a rolling five-week calendar.  Accordingly, since Kourosh Moshir and Sean Moshir have been separated from the Company for more than five weeks,  neither Kourosh Moshir's nor Sean Moshir's .pst files are or would be located on any of these backup storage tapes currently in PatchLink's possession.

14.   PatchLink's current tape backup system was implemented in approximately February 2006.  In addition to the tapes it uses as part of its regular five-week cycle, PatchLink also currently has 61 backup tapes located at offsite storage facility.  None of these tapes are marked or identified, and PatchLink does not know what data is present on them, and for what specific period(s) of time.  Based on the type of tape used and conversations with a PatchLink IT employee who worked at the Company at that time, it appears that these tapes were used beginning in February 2006.  It would take approximately five (5) hours of processing time per tape to review and restore the data on these tapes, or a total of approximately 335 hours of processing time, but that time would allow us only to catalog, and not search, the tapes.

15.   In addition to the tapes discussed above, PatchLink has approximately 200 tapes stored offsite.  We do not know the contents of these tapes, but they appear to have been used by PatchLink prior to February 2006.  PatchLink does not have the equipment

necessary to read these tapes. To restore and extract the data on these tapes would require PatchLink to acquire equipment for the purpose of recovering the data, or retain the services of a third party to extract the data on these old tapes. Based on my experience in the IT industry, the cost associated to do this would likely be in excess of $35,000.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of September, 2007.

_____
BJ Mills

# EXHIBIT K

# Greenberg Traurig

Daniel B. Pasternak
Admitted in Arizona and Illinois
Tel. 602.445.8510
Fax 602.445.8695
pasternakd@gtlaw.com

September 7, 2007

**VIA FACSIMILE - (602) 230-9250**
**CONFIRMED BY FIRST CLASS MAIL**

James M. Jellison, Esq.
Jellison Law Offices, PLLC
3101 North Central Avenue
Suite 1090
Phoenix, Arizona  85012

> **Re:** *Mosbriantanha v. PatchLink Corporation; Case 8:07-CV-0211-DKC;*
> *Shirmohammadi v. PatchLink Corporation; Case 8:07-CV-0321-DKC*

Dear Mr. Jellison:

On August 8, 2007, I wrote to you responding to your July 17, 2007 correspondence, in which you set forth objections on behalf of your client, Kourosh Moshir, to the June 29, 2007 subpoena served on him by PatchLink Corporation.  On August 16, 2007, you sent an email to my colleague, John Lomax, indicating that you needed additional time to consider my August 8th letter and respond, and indicated that you would reply the following week.  However, to date, we have received no reply from you to our August 8th letter.

Attached is a letter we sent today to David Farren, Sean Moshir's counsel, responding to his reply to the letter we sent to him on August 8th (which was substantially similar to the letter we sent you on that date).  Attached to that letter is a declaration of BJ Mills, PatchLink's Director of Information Technology, explaining that PatchLink does not possess in a readily attainable format (and may not possess at all) information in your client's possession that is subject to the subpoena that was served on him.

By this letter, we are making a final request that Kourosh Moshir comply with the subpoena served on him.  Should we not receive by September 14, 2007 all information in his possession responsive to the subpoena, in particular his .pst file taken from PatchLink's email servers, we will commence a miscellaneous action against him as well to enforce the subpoena.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

327943390v1

www.gtlaw.com

James M. Jellison, Esq.
September 7, 2007
Page 2

_____

Very truly yours,

GREENBERG TRAURIG, LLP

Daniel B. Pasternak

DBP:cbm
Attachment
cc:      John F. Lomax, Jr.

327943390v1

# Greenberg Traurig

John F. Lomax, Jr.
Tel. 602.445.8514
Fax 602.445.8616
LomaxJ@gtlaw.com

September 7, 2007

**VIA EMAIL AND
FIRST CLASS MAIL**

David N. Farren, Esq.
Jaburg & Wilk, P.C.
3200 North Central Avenue
Suite 2000
Phoenix, Arizona  85012

**Re:   Sean Moshir**

Dear David:

As you requested in your August 15, 2007 letter, attached is an affidavit of BJ Mills, PatchLink's Director of Information Technology.  This affidavit confirms that PatchLink does not possess in a readily attainable format the email files your client testified that he possesses. Your client, on the other hand, has PatchLink emails readily available.  Please have your client produce the subpoenaed documents.  Although your letter indicates that Mr. Moshir will need more than a week to search for these emails, we believe that he likely has a good sense of where they are located, and in any event, do not believe that this search should take more than a few hours.  Should we not receive Mr. Moshir's complete PatchLink .pst file he copied (or had copied at his instruction) off of PatchLink's email server before his separation from the Company by the close of business on September 14, 2007, we intend to commence an action in the District Court to enforce the subpoena.

Sincerely,

John F. Lomax, Jr.
For the Firm

JFL:srw
Enclosure

cc:   Daniel B. Pasternak

*PHX 327938451v1*

| |
|---|
| ALBANY |
| AMSTERDAM |
| ATLANTA |
| BOCA RATON |
| BOSTON |
| BRUSSELS* |
| CHICAGO |
| DALLAS |
| DELAWARE |
| DENVER |
| FORT LAUDERDALE |
| HOUSTON |
| LAS VEGAS |
| LONDON* |
| LOS ANGELES |
| MIAMI |
| MILAN* |
| NEW JERSEY |
| NEW YORK |
| ORANGE COUNTY |
| ORLANDO |
| PHILADELPHIA |
| PHOENIX |
| ROME* |
| SACRAMENTO |
| SILICON VALLEY |
| TALLAHASSEE |
| TAMPA |
| TOKYO* |
| TYSONS CORNER |
| WASHINGTON, D.C. |
| WEST PALM BEACH |
| ZURICH |

*Strategic Alliance
Tokyo-Office/Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | 2375 East Camelback Road | Suite 700 | Phoenix, AZ 85016 | Tel 602.445.8000 | Fax 602.445.8100

www.gtlaw.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mehran Mosbriantanha,<br><br>                                    Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>                                    Defendant. | Case No. 07-MC-_____<br><br>Related to Civil Action No. 8:07-00211-DKC (consolidated with No. 8:07-00321-DKC); pending in the United States District Court for the District of Maryland, Greenbelt Division |
| Farhad Shirmohammadi,<br><br>                                    Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>                                    Defendant. | |

## DECLARATION OF BJ MILLS

STATE OF ARIZONA          )
                                              )    ss
COUNTY OF MARICOPA   )

1.     My name is BJ Mills.  I am over 18 years of age and competent to make this Declaration.  The facts set forth in this Declaration are based on my personal knowledge or

information I have learned since joining PatchLink. I could and would competently testify to the same if called as a witness in this action.

2.   I am currently employed by PatchLink Corporation ("PatchLink" or the "Company") as its Director of Information Technology ("IT") at its Scottsdale, Arizona headquarters, located at 15880 North Greenway Hayden Loop, Suite 100, Scottsdale, Arizona 85260. In that position, I am the duly authorized custodian of IT records for PatchLink, and I have the authority to certify the records. I began working for PatchLink in January 2007.

3.   In the course of performing my duties as Director of IT, I have spoken with personnel in PatchLink's IT department who were employed by PatchLink during the time periods discussed in this Declaration, and researched the issues raised in this Declaration concerning PatchLink's email systems and, in particular, the email files of Kourosh Moshir and Sean Moshir.

4.   In the summer of 2005 and until September 6, 2005, Milad Al-Najjar was the Company's IT Director, and was responsible for the Company's IT systems, including the Company's email systems and servers.

5.   During the time that Mr. Al-Najjar was in charge of PatchLink's IT department and its IT systems and servers, it appears that the Company had no formal written electronic data backup policies within the IT department for preservation of email sent and received by PatchLink employees over PatchLink's email server.

6.   In September 2005, whenever a PatchLink employee was terminated or resigned from the Company, an IT department employee was notified regarding the termination or resignation. Any IT record preservation procedures, including any such procedures for preservation of employees' emails, were carried out by individual members of the IT department, as directed by a Company manager or executive, and were not mandated under any specific guideline.

7.      In September 2005, notice of an employee's termination or resignation generally came to the IT department through in-person, telephonic, or email notification. Upon notification, PatchLink IT personnel were under standing instructions to take appropriate steps to deactivate the departing employee's user accounts, including removing network access privileges, resetting passwords, removing the employee from any network or distribution groups, forwarding telephone calls and email (if requested/necessary), and the return of any hardware belonging to the departing employee.

8.      In September 2005, upon termination or resignation, employee email accounts were left intact (i.e., not deleted) and were stored on backup tapes. In September 2005, PatchLink created backup tapes each night, and full backups were conducted on weekends. Backup tapes containing electronically stored information, including departed employee email accounts, were randomly rotated and reused.

9.      On or about September 12, 2005, PatchLink hired Brian Steele as PatchLink's Director of IT and Operations. Mr. Al-Najjar and others in PatchLink's IT and operations departments were terminated as part of reductions-in-force implemented by the Company in September 2005.

10.     Shortly after Mr. Steele took over PatchLink's IT department, he purchased an application called ExMerge in order to preserve PatchLink employee email accounts upon termination of employment. ExMerge is designed to take a snapshot of a user's email account and compress it into a single Microsoft Outlook .pst file for purposes of network storage. The average size of a PatchLink employee's .pst file is in the range of one (1) to two (2) gigabytes.

11.     After their separation of employment with PatchLink on September 6 and 14, 2005, respectively, Kourosh Moshir's and Sean Moshir's PatchLink email accounts were processed using ExMerge by IT department personnel. The resulting .pst files were abnormally small, particularly for the Company's CEO and President. Upon further

examination of Kourosh Moshir's and Sean Moshir's .pst files, it was discovered that the "Inbox," "Sent," and "Deleted" folders were virtually empty, with exception of spam email. The only way to create this situation is to manually delete the contents of these folders.

12.     Efforts made by IT department personnel to locate additional emails received, sent, and deleted by Kourosh Moshir and Sean Moshir prior to their separation of employment in September 2005 within PatchLink's file server and a ghost server used as overflow storage on the Company's network yielded no additional files for either Kourosh Moshir's or Sean Moshir's email accounts.

13.     PatchLink currently maintains backup storage tapes on a rolling five-week calendar. Accordingly, since Kourosh Moshir and Sean Moshir have been separated from the Company for more than five weeks, neither Kourosh Moshir's nor Sean Moshir's .pst files are or would be located on any of these backup storage tapes currently in PatchLink's possession.

14.     PatchLink's current tape backup system was implemented in approximately February 2006. In addition to the tapes it uses as part of its regular five-week cycle, PatchLink also currently has 61 backup tapes located at offsite storage facility. None of these tapes are marked or identified, and PatchLink does not know what data is present on them, and for what specific period(s) of time. Based on the type of tape used and conversations with a PatchLink IT employee who worked at the Company at that time, it appears that these tapes were used beginning in February 2006. It would take approximately five (5) hours of processing time per tape to review and restore the data on these tapes, or a total of approximately 335 hours of processing time, but that time would allow us only to catalog, and not search, the tapes.

15.     In addition to the tapes discussed above, PatchLink has approximately 200 tapes stored offsite. We do not know the contents of these tapes, but they appear to have been used by PatchLink prior to February 2006. PatchLink does not have the equipment

necessary to read these tapes.  To restore and extract the data on these tapes would require PatchLink to acquire equipment for the purpose of recovering the data, or retain the services of a third party to extract the data on these old tapes.  Based on my experience in the IT industry, the cost associated to do this would likely be in excess of $35,000.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of September, 2007.

BJ Mills

# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mehran Mosbriantanha,<br><br>                         Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>                    Defendant. | Case No. 07-MC-_____<br><br>Related to Civil Action No. 8:07-00211-DKC (consolidated with No. 8:07-00321-DKC); pending in the United States District Court for the District of Maryland, Greenbelt Division |
| Farhad Shirmohammadi,<br><br>                         Plaintiff,<br><br>v.<br><br>PatchLink Corporation, a Delaware corporation,<br><br>                    Defendant. | |

## DECLARATION OF JASON STRUVE

STATE OF ARIZONA      )
                             )   ss
COUNTY OF MARICOPA  )

     1.     My name is Jason Struve.  I am over 18 years of age and competent to make this Declaration.  The facts set forth in this Declaration are based on my personal knowledge

or information I have acquired since I began employment with PatchLink. I could and would competently testify to the same if called as a witness in this action or any related action.

2.     I am currently employed by PatchLink Corporation ("PatchLink" or the "Company") as a Systems/Network Engineer in PatchLink's Information Technology ("IT") department at its Scottsdale, Arizona headquarters, located at 15880 North Greenway Hayden Loop, Suite 100, Scottsdale, Arizona 85260. In that position, I am responsible for operating and maintaining PatchLink's information technology systems, including its email systems. I have held this position with PatchLink since I was hired in February 2005 (my title has at times changed; but my duties have remained the same).

3.     In the summer of 2005 and until September 6, 2005, Milad Al-Najjar was the Company's IT Director, and was responsible for the Company's IT systems, including the Company's email systems and servers.

4.     For a brief period of time immediately preceding September 6, 2005, Shane Shahmohammadi also was an IT Director at PatchLink.

5.     During the time that Mr. Al-Najjar and Mr. Shahmohammadi were in charge of PatchLink's IT department and its IT systems and servers, the Company did not have any formal written electronic data backup policies within the IT department for preservation of email sent and received by PatchLink employees over PatchLink's Microsoft Outlook exchange email server.

6.     In September 2005, whenever a PatchLink employee was terminated or resigned from the Company, an IT department employee (such as myself) was notified regarding the termination or resignation. Any IT record preservation procedures, including any such procedures for preservation of employees' emails, were carried out by individual members of the IT department, including me, as directed by a Company manager or executive, but they were not mandated under any specific guideline.

7.      In September 2005, notice of an employee's termination or resignation generally came to the IT department through in-person, telephonic, or email notification. Upon notification, PatchLink's IT personnel were under standing instructions to take appropriate steps to deactivate the departing employee's user accounts, including removing network access privileges, resetting passwords, removing the employee from any network or distribution groups, forwarding telephone calls and email (if requested/necessary), and the return of any hardware belonging to the departing employee.

8.      In September 2005, upon termination or resignation, employee email accounts were left intact (i.e., not deleted) and were stored on backup tapes.  In September 2005, PatchLink created backup tapes each night, and full backups were conducted on weekends. Backup tapes containing electronically stored information, including departed employee email accounts, were randomly rotated and reused.

9.      On or about September 12, 2005, PatchLink hired Brian Steele as PatchLink's Director of IT and Operations.  Mr. Al-Najjar, Mr. Shahmohammadi, and other employees in the IT and operations departments were terminated as part of reductions-in-force implemented by the Company on September 6, 2005.

10.     Shortly after Mr. Steele took over PatchLink's IT department, he purchased an application called ExMerge in order to preserve PatchLink employee email accounts upon termination of employment.  ExMerge is designed to take a snapshot of a user's email account and compress it into a single Microsoft Outlook .pst file for purposes of network storage.

11.     Kourosh Moshir's and Sean Moshir's separation of employment with PatchLink occurred on September 6 and 14, 2005, respectively.  After their termination, Brian Steele specifically instructed me not to access or take any actions with respect to their email files.  Mr. Steele informed me that no IT department employee was to touch these files so that PatchLink would have Sean Moshir's and Kourosh Moshir's email files preserved as

they existed on the day their employment with PatchLink ended.  It is my understanding that Mr. Steele gave this same instruction to all employees in the IT department.

12.    After Sean Moshir and Kourosh Moshir had left the employ of the Company, their PatchLink email accounts were processed using ExMerge by IT department personnel. The resulting .pst files were abnormally small (for example, Kourosh Moshir's .pst file is less than 19 megabytes), particularly for the Company's CEO and President.   Upon further examination of Sean Moshir's and Kourosh Moshir's .pst files, it was discovered that the "Inbox," "Sent," and "Deleted" folders were virtually empty, with exception of spam email. The only way to create this situation is to manually delete the contents of these folders. Because their email files had not been touched by IT department personnel since they left the Company, the only explanation for this situation is that Sean Moshir and Kourosh Moshir, or someone acting on their behalf, deleted the vast majority of the contents of their email files and folders.

13.    In the last several months, I (along with other IT department personnel) have made numerous efforts to locate additional emails received, sent, and deleted by Sean Moshir and Kourosh Moshir prior to their separation of employment from PatchLink in September 2005.  Specifically, I have spent hours searching PatchLink's file server and a ghost server used as overflow storage on the Company's network, but these searches have not turned up any additional emails or files for either Sean Moshir or Kourosh Moshir.

14.    PatchLink currently maintains backup storage tapes on a rolling five-week calendar.  Accordingly, since Sean Moshir and Kourosh Moshir have been separated from the Company for more than five weeks, neither Sean Moshir's nor Kourosh Moshir's email files (or any .pst files) are or would be located on any of these backup storage tapes currently in PatchLink's possession.

15.    PatchLink's current tape backup system was implemented in approximately February 2006.  In addition to the tapes it uses as part of its regular five-week cycle,

PatchLink also currently has 61 backup tapes. None of these tapes are marked or identified, and PatchLink does not know what data is present on them, and for what specific period(s) of time. These tapes were used beginning in February 2006. It would take approximately five (5) hours of processing time per tape to review and restore the data on these tapes, or a total of approximately 335 hours of processing time, but that time would allow us only to catalog, and not search, the tapes. PatchLink received a quote of $175 per tape to process the tapes from an outside vendor; thus, it would cost in excess of $10,000 just to find out what is on these tapes.

16.    In addition to the tapes discussed above, PatchLink has approximately 200 tapes stored offsite. PatchLink does not know the contents of these tapes, but they appear to have been used by PatchLink prior to February 2006. PatchLink does not have the equipment necessary to read these tapes. To restore and extract the data on these tapes would require PatchLink to acquire equipment for the purpose of recovering the data, or retain the services of a third party to extract the data on these old tapes. Based on the $175 per tape quote PatchLink received, it would cost $35,000 to scan each of these 200 tapes to determine if any of Sean Moshir's or Kourosh Moshir's emails are on the tapes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of September, 2007.

Jason Struve